Case number 213068, Santos Italian Cafe LLC v. Acuity Insurance Company, oral argument, 10 minutes for plaintiff, 5 minutes for amicus united policyholders, 10 minutes for defendant, and 5 minutes for amici, APCIA and NAMIC. Mr. Salmon for the appellant. Thank you, your honors, and may it please this court, my name is Colin Salmon on behalf of APCIA. The issue here as it respects the initial coverage is whether or not the coverage provision of the policy provides for a deprivation of Santos's premises by order of the government. Here the clause imparts two types of coverage by virtue of the language in the coverage provision. The first is a physical deprivation of the property, and here we have a physical deprivation of the intended use of the property as a dine-in restaurant. This court has previously held in U.S. v. Hill and Coward v. Million that terms joined by the disjunctive or must have different meanings. Therefore, physical loss of means something different than physical damage to. Why couldn't loss and damage, you know, you think of Venn diagrams, they don't cover everything exactly the same. I mean, loss might cover theft, for example, damage might cover hail. So, I guess I, it's a little funny in my view in an insurance contract to focus too much on the fluidity canon. And the reason I say that is I've never read an insurance contract that wasn't about 10 pages superfluous. I mean, I don't want to blame anyone here, but my sense of these contracts is it's like a thesaurus, right? I mean, you just one repeat word after another. So, back to the simpler point, which is where you started, isn't it possible that loss and damage can cover slightly different things, for example, hail, damage, theft of the, you know, the grill? Yes. And that's the point that we're trying to make here is that loss of, the phrase is not as the appellee has quoted multiple times in the brief where they say that it's simply loss or physical damage, it's loss of. And the word of has to have meaning here. Otherwise it would be rendered meaningless. And as Ohio law holds, you can't have words in a policy that mean nothing. So, loss of property connotes deprivation of the intended use of the property. And this is something that the court and in race society insurance. The key addition there is intended use. That's what you're, that's the gloss you're putting on it. Well, that's the reasonable interpretation we're putting forward because otherwise the words would have no meaning as it relates to a business property policy. The business is at its property in order to have operations for its business to make income. And unless you attach that meaning to those words, they would mean nothing in relation to what this policy is intended for. So, just maybe I'm, I could be the one missing something. So, just hesitate to say that's what's going on, but I'm still not sure I understand your response to my example. They steal the grill. That is a loss of the grill. You can't, that's really important. Or hail sufficiently damages the roof that it's covered. That's damaged too. So, tell me why that it doesn't show you can have different meanings. No, I agree with what your example shows. And that's exactly what we're putting forward is that here the government orders resulted in Santos being deprived of its dine-in operation area of the restaurant. It was unable to use that area, that physical area for its intended. But that's not the loss of something the way comes into the restaurant, picks up the grill, and leaves with it. Sure. That's the more natural reading of loss. You want to say anything that makes it hard to run the business is a loss. No problem. No, that's not what we're saying, your honor. And I do understand what you're going to hear now. The loss, Santos was able to use its entire premises for its dine-in operations up until the government said, you can't do that anymore. You can't use it for that intended use. Let's put the government to the side and let's imagine the very worst time of COVID or God it's basically do not go outside. No one's shutting anything down. It's the liberty state that says do whatever you want. So no one's shutting a darn thing down. But Santos is toast. No one's coming in the restaurant by definition because no one's leaving their home. You would call that loss of as well? I would call that loss of the premises. The policy would apply because COVID, a pandemic, something is sufficiently raging that no one's going out to use hospitality services. And that would count as a loss of without regard to government orders. I would say it would, your honor. What about the fact that, I mean, I assume that Santos, like many restaurants, is having trouble getting help these days. And part of the reason you're having trouble getting help is government policies or people don't want to work because of their fear of COVID. Is that covered? Is that a loss? Because you can't use your restaurant for its intended purpose if you can't get waiters and waitresses. No, I think we have to go back to the the statement of coverage says we will pay for actual loss of business income. And then it says during a period of suspension. And then it says the suspension must be caused by direct physical loss of or damage to property. So it's not speaking to loss of employees, loss of help, those types of things, loss of property that we're talking about here. And so yes, where the government says you can't use this area of your restaurant for dine-in operations, they're experiencing a loss of use of that physical area. But the policy doesn't say direct physical loss of use. It says physical loss of. Isn't it? Right. It says physical loss of property. And when you deprive an owner of the use intended use of their own property, what you're causing them is a loss that that is they're they're losing the property for its intended use. And for you. So our position, obviously, is that it's covered by that provision. The what if what if we reenacted prohibition and you ran a bar? And so, you know, we amended the Constitution and now you can't use your property. You know, it's a physical loss of your property because nobody can come into your saloon. No, very legal. Yeah, no, that that would not be a deprivation of the property. It would just be a deprivation of a liquor permit. You're still allowed to use the property for some purpose, just not allowed to use the property for takeout. People could come into your restaurant, pick things up and leave. Yes, but not that was only a segment area of the restaurant itself. The dine-in area of the restaurant was completely shut off to the general public. It was not able to be used for for its purpose. But what's your take on the ordinance or law exclusion? I'm glad you brought that up because I think it it it it has two two meanings here. And the first is that, first of all, an executive order by the governor does not is not an ordinance for a law ordinance passed by counter to that. Governors, like all people in public service, have no authority unless it comes from a law. He is enforcing an emergency powers law. And so that seems very strange to me. Ordinance or law is covering the sources of authority by which you act. You would not say, oh, it's true. There was an ordinance that allowed the local official to do something. But when the local official did it, it was no longer connected to an ordinance. That's I find really hair splitting. It may be hair splitting, but again, the the terms of the policy control and that's what those say. They don't say executive orders. The policy could have been written to say executive orders. And it doesn't say that acuity could have written it that way. It's their policy and it must be in this case construed against them if you're looking at that particular provision. But I think what is also interesting about that provision is that it speaks to at subsection two. Oh, no, I'm sorry. Subsection one is that it says that this exclusion applies whether the loss results from an ordinance or law that is enforced, even if the property has not been damaged. And so going back to the coverage provision, acuity says that there's no physical damage to the property. But this provision would suggest that there doesn't have to be physical damage. You only need physical deprivation of the property, which is what we've been arguing. Why is that? It doesn't have loss, just says damage. Right. Right. It's it says even if so. So the only way this this portion of the exclusion makes any sense is that if there can be coverage for a physical loss of, in other words, a deprivation. Otherwise, you are required in every instance to have physical alteration of your property for that to be a loss. I'm not sure. Yeah, I'm not sure I get the point you're making. Well, maybe maybe this next question relates to it. I just want to make sure I'm getting one thing that I hadn't quite appreciated in looking at this that, you know, we're all talking about the business income and extra expense provision, right? That's the coverage part you're focused on. Correct. But covered the covered loss part of this, right? The trigger for all of this says you need direct physical loss, right? So take the word loss out of it because that's defined later. But am I right in thinking that you never get coverage without direct physical, that direct physical is is required whether you're talking about loss or damage? Um, I would say you do not need direct physical loss and don't use the word lost. The key thing is it says direct physical. That's the threshold requirements for anything. Now direct physical could cover loss because physically the grill is gone. Direct physical could cover damage physically the roof was hurt by the hail. I'm just trying to make sure I'm understanding is direct physical a predicate for every form of coverage? Not in the sense that you're suggesting in those examples. But physical just means something physical such as the area of the restaurant that we've been talking about the dining area of the restaurant. That's a physical area. It's not something, you know, what does the word direct mean? I mean, that's what I don't that's just a funny, I would you want to say physical gets to whether you can use it. And I'm trying to say, the very natural reading here is these unanticipated events, whether it's a theft, whether fire, you name it, and those have direct, they all have direct physical in common. That's what makes this have sense to me. Okay, direct just means that the loss is direct. I mean, it's a direct physical doesn't have any more or less meaning than direct physical loss of I mean, you have to read all those words together in combination. Your thought about this is not to say, hey, yeah, direct physical does apply throughout. But it doesn't matter here because a virus is direct and physical. It's actually a thing. And it directly can be in on someone's property. That's not your argument. No, I know here, here, the direct physical pertains to the the area of the property that was lost. And here, the indoor dining operations were lost because of the deprivation by the government of Santos ability to use and enjoy that portion of the property as its intended purpose, which is to make money. We're talking about a business here. This is it. How does the language with regard to the payment of business income? How does the language figure in the way you're dealing with this? When the prompt the policy says that they'll pay for lost business income only during the period of restoration? What what would be a period? And that if you look at the policy carefully, that kind of wouldn't cover. Today, you can't use the indoor dining. But tomorrow you can. So what's the period of restoration period of running early, you would expect that has to do with rebuilding, refurbishing all those things that would occur as a result of a direct actual physical loss to the to the to the premises. So the period of restoration goes to the scope of the loss, not coverage for the loss to begin with, is what we argued. And if you look at that period of restoration provision, um, the the during the period of restoration is a time element of coverage. So the that provision itself doesn't necessarily period of restoration. I mean, if that time element surely impacts what you can get paid for. Sure. And it speaks to the scope of the loss and amount of business income lost, not a trigger for coverage for the loss itself. But But here, I think what Judge Batchelder is getting at is isn't your period of restoration zero, because it's not like there was some contagion in the space that had to be fumigated, or, you know, we had there was mold. And so it had to be eradicated before it was safe for people to come back in. Your allegation is we don't even know if the virus was ever in your restaurant. So is your period of restoration zero because you didn't that there is no cleanup time? No, the period of restoration would go to the time element of the loss itself. So again, when you talk about the terms that are saying that from the moment the governor shut you down, until the moment that you're allowed to start back up, that's your period of restoration? Is that what you're saying? Well, that would be the period of restoration, because there's no other way to calculate it. In this instance, the the period of restoration, and we look at the term restoration, restore, it speaks to replacement. And, you know, the terms, given their ordinary meaning, replace just means to restore to the former place or position. And here, to replace Santos indoor dining unit, dining area just means to restore it back to its normal operations. And so, again, ACUITY wrote this policy. So Mr. Salmon, Mr. Salmon, we've given you not so much giving you, you've been giving us a lot of assistance, but because we have amicus, I'm going to let the amicus go, you get your full rebuttal. Thank you. Let's, let's let your amicus go. And then we may still have some additional questions on rebuttal. But thank you for answering these questions. Really appreciate it. Okay, so your amicus. Good morning, your honors. It's john Ellison from Reed Smith, on behalf of the amicus party, United Policyholders. I'm going to try and shorten my remarks, and then maybe answer some of the points that your honors have raised in some of the questions there. If you're wise, you'll go right to the questions, but you do what you want. Okay, well, then the first point, I think, this was Judge Larson's question about the suspension of operations. I think it's important that the policy defines suspension as either a partial shutdown, or complete cessation of your business activities. So in other words, the business does not have to be fully closed. So counsel's arguments that that portions of the facility were rendered unusable and unavailable for in person dining should be enough to trigger the coverage in terms of what is a suspension or not. So hopefully, that is helpful on the law and the one other two other things. And in addition to that, first, if you read law and ordinance, Chief Judge Sutton, as you had suggested, it could be read, that would wipe out the civil authority coverage in the policy. And I don't think, you know, under the tenet that you're supposed to give meaning to all provisions of the policy, you generally can't interpret one portion of the policy in a way that renders illusory other parts of the policy or meaningless. And so just help me out to make sure I'm understanding your point, because I don't know, I'm not sure exactly what you meant by the civil authority provision. But just, just so you understand where I'm coming from, the way I see it is, you have a statute, a law in a state, and the law says, during emergencies, the governor is empowered to protect the public through executive branch orders. That's what the statute said. So huge delegation of power. It's a law. The law doesn't automatically apply at all times in all emergencies, because the way it works is it asks for the governor to articulate exactly what to do, do you shut this down or shut that down. And you're saying unless the legislature in the law says, during pandemics, all restaurants are is a matter of understanding how law works and how administrative law works. I find that very strange. The governor has no power without the law. And all that's going on is, it's the executive, it's the legislature saying, we will let the governor articulate, for example, just what gets shut down and when, but the power is, is from a law. So tell me why that makes some other, I don't understand what you mean by that making some other part of the policy absurd or whatever you were saying. Okay, that's helpful. So there is the ordinance in law, but but there is a next step that's required, right? The governor or some executive has to take an action to implement the law. Historically, the ordinance and law exclusion has been directed at things like building codes, municipal requirements that say, if your property is to be rebuilt, you don't get grandfathered in to have new tube and knob wiring, you have to update it today's electrical standards, that typically costs a lot more money. And a lot of property policies have an ordinance and law exclusion like that, that does not require the insurance company to pay for the upgraded costs that's imposed by a today building code. That's a law that exists as opposed to a law that then requires some other action by the governor. And the reason I think that renders could render the civil authority provision portion of the policy invalid and non-existent is that if you interpret the ordinance and law provision to include executive actions under a law, then the orders, the actions that would generate civil authority orders like the ones that the governor issued here could never trigger the coverage provided by the policy under the civil authority provision, which is an express coverage grant in the body of the policy. Give me a specific example of when that classically applies. What would be a coverage type situation from a civil authority? I think the current situation is one, but I think the historic one that most people talk about is the orders that were issued after 9-11, shutting down airports, shutting down portions of Manhattan like below 14th street where no business was allowed to operate after the trade centers collapsed. And you're saying this policy provides coverage for that type of event? It can. There's usually time limitations imposed on it, but I have the policy right here. I'll try and find an exact reference. No, I'll go look for it. The thing that's... It's subparagraph eight in the business income section and it's on page 131 of docket number 7-7 is the civil authority coverage. So just so I'm clear while we're looking, your argument is, God forbid, we have another terrorist threat in the United States. It targets Ohio. The president says, we're shutting down all businesses or we're shutting down the railroads or whatever. A policy like this would cover that. And the reason it would cover that is because the order comes from the executive branch, not the legislature, or am I missing a step here? No, no. Well, in that instance, I think you're right because our view is that order would be outside the law and ordinance exclusion because it's a civil authority order and the policy recognizes those as two different things. So a civil authority order can trigger coverage under the civil authority grant of coverage if there's other criteria there that need to be met. The thing that I find really at what has happened to government regulation in this area, because sometimes you have states, legislatures, and governors having different views. And so it would not be unusual. I haven't gone to see an example, but it's really quite plausible that you'd have the legislature be the one saying, okay, here are the rules. It's shut down now and it's shut down for this length of time. And you're telling me that's outcome dispositive. And I find that utterly bizarre. I think historically, well, historically... You understand what I'm saying, right? I know exactly what you're saying and I'm going to try and answer it. I think historically, there has been a distinction between legislative action and executive action. And that is recognized, I think, in the difference of the term civil authority orders, which is typically an executive action, as opposed to law and ordinance, which as counsel said, is typically a legislative or municipal body type of action. I think you're right. In Michigan, you may not know, but we had this whole kerfuffle about the extent of the governor's emergency powers. And then our Supreme Court said they weren't okay. And then everything went through an agency and then it was okay. So is this how we have to parse it? Is it the department of HHS or the governor itself or the legislature? Is that outcome dependent and determinative here? I honestly have to say, I am not aware of a single case where civil authority orders have been litigated that were the result of agency action. I think that my view is that's in a gray area and I could make my argument, but I'm sure insurance company counsel could make their argument. I think the historic distinction has been between executive and legislative. Agency action is somewhere in the middle. And you do realize, of course, we all realize as lawyers, this is the whole point of our system of government. A statute by itself is not self-enforcing, right? I mean, the only thing that makes it real is the executive branch saying, what are you doing still offering dine-in services? That's what it by itself, it's the notorious tree in the forest. And so it's just a really funny, but I really, you've been very helpful by telling us about this existing civil authority coverage. That seems like a powerful point that we've got to come to terms with in terms of how these two things interrelate. Could I add one more point to that? Which is separate but different, related but different. Many property policies also provide ordinance and law coverage or something called increased cost of construction coverage, which is the converse of what the ordinance and law exclusion in this policy does. So in some policies, there is an affirmative grant that says, if a building code requires you to do something that wouldn't have been done to replace the old property, we will pay for that increased cost as a result of the damage that needs to be fixed. This policy obviously doesn't do that, does the exact opposite. But what I'm saying is that this is a concept and a type of coverage and exclusion of coverage that has been in policies for a long time and hasn't understood meaning in the industry. And this exclusion is the converse of what is sometimes provided as an affirmative coverage. Do you have a best case or two or treatise that says, you just said something which is so helpful to us. This type of exclusion has an accepted meaning in the industry. I'm all ears on that point. What is the treatise case or two that explains that accepted meaning and shows that it wouldn't apply here? I mean, what I'm struggling with is I have a suspicion the accepted meaning would apply here. I think this is just like a zoning case. I just feel like all that happened was it was a zoning amendment that said, hey, for now you can't use it for this reason because of COVID as opposed to because we don't want that use in this neighborhood. That's what it looks like. It looks like a zoning situation. And I assume zoning is a classic example, right? Zoning would be a classic example. Building codes are a classic example. If you guys want to provide supplemental authority, maybe it's a better way to do it. But I'd love to know the treatise, the cases that say, here's the way we think of this accepted meaning. That's very helpful to us. I think you think it shows it doesn't apply here. And like I said, I'm all ears. I don't have the cases off the top of my head. I can give you a treatise, but I also don't have a section in the treatise. If you want to provide supplemental authority within a few days, but I wouldn't wait a lot longer than that, go for it. But you have not had a chance to talk about physical loss of or damage to, and I know you've been hearing what we've been saying about that. Do you have things you want to say to supplement that conversation? Yes, please. If your honors would indulge me, I'd be grateful. And I should have said in the appear here. That doesn't happen a lot. So far, we're grateful. Okay. Well, thank you. And I also should say it's always good to appear back in my adopted state of Ohio as a loyal. Our gratitude is dissipating. Okay. All right. I'll stop and say while I'm ahead. Just on the physical loss point, almost all of the authority that has come out post the beginning of the pandemic has cited to the couch on insurance treatise and specifically section 148 colon 46. That purports to put forth what is the widely held view about how physical loss hasn't been interpreted across the country, including in Ohio. In our papers, we have tried to show to the court that the premise for that statement is factually wrong. Because at the time that that provision was introduced into the couch treatise in the mid 90s, it set forth a proposition that was not the widely held view. In fact, it was the view of only a single court in Oregon. Okay. All right. We've got that point that we should be careful about drawing too many conclusions from couch. Anything else that builds off of questions we've asked or that shows we're missing something? No, I think the only other point I would say is that if sort of the custom and practice of what has been done in the industry is important. And it on what the general view of the law has been on the physical loss question, that the overwhelming majority position nationwide is, is in favor of physical loss, including where a fortuitous agent causes some impact on a property that renders the property either dangerous or unable to be used. That's the case. Why did most of the cases in the COVID setting seem to be going the other way? They rely on couch and couch is the authority on which Mastalone relies, which is the only Ohio authority. That's not going to help you. We're not going to correct the Ohio courts. That's not what happens in a diversity case. Well, I'm not saying you have to correct them. I'm saying you have to analyze the predicate for the Henderson case. He said the language in Mastalone and the premise for Mastalone are not what I have before me. Judge Poster's case involved real property. That was the phrase and loss and damage. You can imagine a situation where it's a little harder to show distinctions when it comes to loss of real property, whereas loss easily fits with theft, like theft of real properties, a tricky proposition. That's not the only distinction, but that would be an explanation why that one doesn't help much here. This has been very helpful. Can I add one last point on that, what you just said, Your Honor? Something I meant to come back to from your original questions for Santos' counsel. I think it's important when you look at loss and remember that it appears in the coverage grant, which is supposed to be broadly construed, and it doesn't have to have a single meaning. It certainly applies in the theft situation like you've posited, but it is not necessarily limited to that. Broadly construed, loss can have a whole variety of meanings. If the insurance company wanted to limit it, it could have defined it to limit it, and it has not, notwithstanding the decades it's been in use. Most assuredly have that point. Thank you. Really appreciate your help, both the brief and answering the questions. Let's hear from the other side. Thank you, Your Honors. Thank you. May it please the court. John Clista representing Acuity. I'd like to talk first about the insuring language, but I would like to, of course, address the virus exclusion. Santos' reading of the to the word physical and adds the word use. It's not loss of use. It's physical loss of property, and the facts here are that Santos has been separated from one type of customer, a dine-in customer. It has been, it has lost one temporarily, one type of operation, a dine-in operation. It has not lost any aspect of its property, any. This argument would suggest that they win if the governor shuts down dine-in and takeout, which is not implausible. One can imagine takeout having risks too. So are you saying the case comes out differently if the governor had banned takeout as well? Well, Acuity isn't insuring the operations. It's insuring the property. At base, this is a property policy that includes additional coverages for income and extra expense, but those additional coverages are tethered to the physical loss or damage of the property. Now, there are three what I would call textual clues that show that Acuity's reading of this insuring language is correct and that Santos' reading is untenable. The first textual clue is what Judge Batchelder and Judge Larson have touched on is the period of restoration language. That language is not found in some remote part of the policy that the insured will never read. It is found directly in the business income and extra expense sections telling the insured, if you want this coverage, if the coverage is available, you better know what this period of restoration means. And the insured goes to the italicized word, the definition section, and finds out that you must compare two periods, the period to repair, rebuild, or replace the property, or the period to resume business at a new permanent location. Both of those periods have to be taken into effect, which means that in every loss, in every damage, you need some type of event that requires a repair, a rebuilding, or a replacement of a physical loss or damage. This period of restoration language was not present in the Henderson Road case. Judge Polster didn't have occasion to interpret that in connection with the insuring language. Had he that opportunity, his result may have been different. The second textual clue that I'd like to point out is the civil authority coverage itself. Under that specific coverage, it is possible for an insured to recover for what I would call a pure loss of use, as Santos is alleging here. But there are a number of elements you have to reach to get that type of coverage. Those are spelled out in our brief. Santos has weighed that coverage in this case, but the coverage itself is important because it informs us on the insuring language. Those five or six elements that we have established in our brief must be met to have a pure loss of use. Remind me what they are, just a few of them even. You have to have a damage to a property other than the insured property. You have to have damage to that property within a mile of Santos' property. Are all of them unified by the idea that the civil authority is regulating something other than the insured's property? Does that link all of them or just link some of them? The classic example that always comes to my mind is if a fire destroys a neighboring building. I have that in mind. I'm trying to figure out if that is a precondition or just happens to be true sometimes. All of those requirements do have to be met for the civil authority coverage. Are all of them linked by the civil authority regulating property other than the insured's property? The civil authority has to address that other property. There has to be a dangerous physical condition. Santos' property has to be within the area that the civil authority is cordoning off, prohibiting access to. The point I'm trying to make is that all of here... Tell me if this dichotomy works. One way to look at the ordinance or law exclusion is that that's when the government, broadly defined, is regulating the property of the insured. The civil authority provision for coverage only applies when the government, broadly defined, is regulating nearby property but not necessarily the property of the insured. Is that dichotomy accurate or am I missing some qualifications? It certainly sounds correct to me. I can't say that in every factual scenario that would hold up, but it certainly sounds like the appropriate way to look at these. The civil authority elements that we've listed in our brief... Are there any cases that say the word law not only refers to a statute by the legislature, but it can refer to a regulation promulgated under the authority of a statute? In other words, the statute says this agency, this governor, needs to go past these regulations within the next six months and they count as, quote, laws because it's an obligation that grows out of the We did locate some cases, COVID cases, that have applied the ordinance and law exclusion to similar type orders in other states. One case is New Chop's Restaurant. Another case is Image Dental. Isaac's Deli is another one. There is also a Sixth Circuit case called Wright v. State Farm, 555 Federal Appendix 575, where this court addressing the ordinance or law exclusion, not in a COVID context, defined law as a rule or mode of conduct or action that is prescribed or formally recognized as binding by a supreme controlling authority or is made obligatory by sanction as an edict, decree, re-script, order, ordinance, statute, resolution, rule, judicial decision, or usage made recognized or enforced by the controlling authority. So it's a very broad definition that this court in Wright applied to the word law. How would we deal with this case if it said loss of or damage to real property? What would we do with the fact that, you know, one way of avoiding superfluity between loss and damage is the theft example. You know, loss equals theft. Sometimes damage could be physical damage like hail. But when it's loss of or damage to real property, it's kind of hard to imagine someone absconding with real property. So what would you do in that setting? Would you just say, well, this is just a classic example where an insurance contract has lots of terms that are often overlapping and that's all there is to it? Or what would you say? There may be some overlap, but there is a distinction as well. The word loss in connection with real property more properly fits the fire example or the tornado example. You can have a fire that damages property or you can have a fire that totally destroys a building. And it's a little bit awkward or a little bit more natural, I should say, to refer to that as a loss of the building. The fire has completely destroyed the building or the tornado has. Yeah, I see. So in that sense, I don't think the insurers in cases where the word is loss to property would deny coverage for those. But I think it's just a more natural reading to say that the building that was completely destroyed has triggered a loss of property. So that is, you know, the reading of loss of which also has to be, again, read in conjunction with the period of restoration coverage, rebuild, repair, replace, and the point on civil authority is that it is unnecessary under Santos's reading of the insuring language to go through all of these elements in the civil authority coverage. If they want to recover, under their theory, income or extra expense, they merely need to show a temporary loss of an operation of their business. They have no need to jump through all of these hoops in the civil coverage, which renders that civil authority coverage superfluous. But the thing that's funny to me is I was focused on direct physical as this predicate requirement. It's in the initial definition and you can argue direct physical modifies loss and damage. So that seems kind of important. But how is there any direct physical when what has happened is the place next door was burned and the government says, you got to leave here for a while. I mean, there's no direct physical anything to the insurance property. It's just standing there, but it happens to be next to a building that could tumble at any point. So where's the direct physical in that case? Right. Again, as I this is the one type of coverage where Santos can recover when its property has not been damaged. But again, it requires this effect spilling over from a neighboring property within a mile away. So this is the type of loss of use that can be covered. But you're pointing to the language under the opening language under civil authority when a covered loss, the covered cause of loss causes damage to property other than. So you're saying that doesn't mean it has to happen to the property insured at all. But that specifically says it's a covered cause direct physical damage to something else. Right. That's the focus of this coverage. It's something happened to some neighboring property that has caused the civil authority to basically prohibit access because of a dangerous physical condition. But why? Why isn't a way to think about that? The predicate is risks of direct physical loss, risks of direct physical loss. Why isn't the way to think about it that when the neighboring building might fall down or is what's gone, what's going on here is that's creating a risk of direct physical to the insurance property. Is that not the way to think about it? Under the insuring language, the risk of physical loss must again say a fire, a risk of a fire must cause damage to that neighboring structure. And it does. And the civil authority sees that the structure is in a dangerous condition, cordons off the blocks so nobody is hurt by collapsing debris or leftover elements of the fire. And Santos happens to be caught up in this. Its building is untouched. But because of these dangerous physical conditions and the order of the civil authority, it has been barred access to its property. In that situation, Santos, though unharmed in its property, can potentially recover. However, but your point, I think Judge Sutton's point is that there must be, should he wants to know, should we read the policy such that there must be a threat of physical loss, meaning the smoke will get into your building, into the insurance building, or are you covered even though there's no real harm, no real threat that your building is going to collapse as the result of this fire. It's just that they've cordoned off the area to keep pedestrians from getting near the building that is dangerous. Do you see what I'm saying? I think so. I hope so. The civil authority must respond, must be responding to dangerous physical conditions at the neighboring property. Right. So there's no requirement that there be a threat of a physical condition on your property, on the insurance property. Correct. Santos's property is just within that cordoned off area because the civil authority needs unimpeded access or because of dangerous physical conditions that may result. So in that one situation, Santos can be entirely free of any loss or damage to its own structure and could possibly recover. But if their view of this insuring language is correct, they don't have to jump through these hoops. I think we've got that. And I think, thank you for answering all of our questions. Let's move on. Thank you very much. May it please the court. Thank you. I'm Stephen Goldman, counsel for the Amici American Property Casualty Insurance Association and National Insurance, excuse me, National Association of Mutual Insurance Companies. I want to start off by pointing out the importance of the words direct physical, which seemed to be sometimes paid into and sometimes ignored in the plaintiff's argument. But according to the plaintiff's view of direct physical loss of property, if the restaurant employees quit and the restaurant was therefore lost, the restaurant owners lost their ability to use the property because their employees weren't there. According to the plaintiffs, the restaurant would sustain a direct physical loss or if the truck. I think he answered that question. I think he said the answer is no. The problem here is that their dining room was regulatorily cordoned off. I asked him about what if the workers don't show up and he said, no, that's not a problem. Well, but that's inconsistent with the rationale for saying that the loss needs to be that a loss of use is what they've said in their brief is loss of use is direct physical loss or direct physical loss is loss of use. And so that's not what the policy says because the policy says that the loss to be covered must be a direct physical loss. And so the problem is if you have something happen external to the property, which is what we have here is a governmental order, a pandemic outside the property. There's nothing directly or physical that happened to the property at the premises. It's still there. It's unimpeded. It's not scratched. It's not they've stipulated in their brief. There was no COVID on the premises. They're not claiming that nothing happened to this property. This is a property insurance policy in the business income coverage is coverage that is derivative of direct physical loss of or damage to property. Similarly, if you had a truck delivering the spaghetti sauce ingredients that ran out of gas and they didn't have their or all their ingredients and they didn't have the materials they needed to be able to conduct their business, there'd be a loss of use, but there would be no direct physical loss of use because nothing happened to the property. Similarly, if you have an olive garden franchise move in next door and they steal the employees. I don't think he disputes any of that. I think his point is what the governor did here is took square footage from my restaurant, my dining room. And the governor took that away from me because he said, you cannot, this area is cordoned off. I mean, in Michigan, they were physically roped off. I don't know what happened in there, but so his point is there's a physical loss because I can't use this room, which is the main portion of my business. Well, but that would apply. So if the rationale for why this is physical is because it the restaurant, then that, then the words direct and physical would be superfluous because the only thing this policy ensures is tangible physical personal property. That's the only insured property under this policy. So any loss of any nature would be according to that rationale would be direct physical because it would have to affect physical property. That's the only thing insured by this policy in the first place. And this is better, this is illustrated by the actual architecture of the policy words. When we look at the grant of business income coverage, it provides for loss of income caused by a suspension. And that suspension in turn needs to be caused by direct physical loss of or damage to property. And what's happened here is the plaintiffs have conflated the term direct physical loss with suspension. They say our operations have been suspended. We lost our ability to operate the premises. The operations were suspended by the government. They say the government order, with a pandemic or a combination of the two. If that's true, then what was the physical loss that resulted from that? The policy clearly contemplates, you've got two different things going on here, the suspension of the operations, but that has to be caused by the direct physical loss. They've got the suspension, they're sort of both conflating the suspension of the direct physical loss and reversing the order at the same time. And there's a graphic at pages 12 and 13 of our amicus brief that illustrates that. In terms of the civil authority- So your time's up. So make your last killer point for us. Love to hear that. But after that, it's been an hour and we have some rebuttal from Mr. Salmon. I understand. Thank you, your honor. Just to the ordinance of large civil authority grant, there's a confusion here because in the discussion, the ordinance or law exclusion excludes loss or damage, loss of or damage to property. That's an exclusion of cause of loss of property. Here, the claim is that the loss of use is the loss. So the ordinance or law cause that that exclusion applies on its face. The civil authority coverage, like the dependent property coverage, which applies to losses caused by losses to suppliers or customers, is an additional coverage. It's an extension of coverage. It's a separate coverage. And that applies simply to something that happens to offsite property that prohibits access. But it doesn't negate the ordinance or law exclusion, which applies to- That's helpful. Thank you. Thank you very much. Mr. Salmon, you have your rebuttal. Thank you, your honors. Real quick, I think we heard ACQUITY and ITS-AMICUS say two different things. ACQUITY says the policy doesn't insure against operations when ITS-AMICUS just said that it does. So we get the policy language does in fact speak to the loss due to the necessary suspension of your operations. So that's the first point. The second point is the law or ordinance that is being enforced here is not the governor's ability to enforce laws, but actually his own dictate as to suspending operations of all dine-in operations of restaurants throughout the state of Ohio. But you think the law or ordinance exception would apply if what the I'm saying is that the ordinance or law section speaks to, it's at 1A, the enforcement of any ordinance or law. And here we don't have that. We have the governor making dictates. And I think the point you raised as well, the governor can only act based on law. That's not what's being enforced here. What's being enforced is an executive order to suspend all restaurant dine-in operations, which by the way, decimated a lot of small businesses throughout the state of Ohio. We all know that. The direct physical issue, your honor, Judge Sutton, I think that pertains to approximate cause element, not necessarily anything else. So that there's not a claim of loss that's too far down the chain of causation that cannot be deemed covered by the policy. In my last few seconds, your honors, we appreciate your time today and your attention to this case. From the questions, it's clear that you find this case very important. We appreciate hearing those questions and answering them to the best of our ability. I think we will take you up on your offer, Judge Sutton, to submit some supplemental authority on that issue. We'll do it very quickly, but thank you for your time. On behalf of myself and Mr. Ellison, we appreciate your attention to this case. Yes. Thanks to all four of you for your helpful briefs and for answering our questions during argument, which we always appreciate. I appreciate if you coordinated so that it worked just through the two parties, but if you want to file supplemental authority by the end of this week, this Friday, feel free to do so. No argumentation, just citations. That's all we want. That way we avoid the inevitable motion to respond to the letter. So the letter will just contain citations. I think you know from this argument, we understand the case. So thanks so much. We really appreciate this and thanks for your hard work. It's going to help us, we hope, issue a good decision. Your Honor, may we also submit a similar brief letter with citations? Oh yeah, yeah. I'm sorry it wasn't clear. I meant both parties may file something on no later than five o'clock this Friday, and all it should contain are the citations. Thank you. And if you want to put the citations connected to law and ordinance or virus exclusion or civil authority, that would helpful, but no argument please. And thanks so much. We're really grateful for your help.